1

2

3

4

5

6

7

8

9

10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11   PABLO RAMIREZ,                    )      No. C 10-4352 LHK (PR)
                                       )
12             Petitioner,             )
                                       )
13     v.                              )      ORDER DENYING PETITION FOR WRIT
                                       )      OF HABEAS CORPUS; DENYING
14   G. SWARTHOUT, Warden,             )      CERTIFICATE OF APPEALABILITY
                                       )
15             Respondent.             )
     _____)
16

17          Petitioner, a state prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  The Court ordered Respondent to show cause why the petition

19   should not be granted.  Respondent has filed an answer addressing the merits of the petition.

20   Petitioner has filed a traverse.  Having reviewed the briefs and the underlying record, the Court

21   concludes that Petitioner is not entitled to relief based on the claims presented and denies the

22   petition.

23                              **PROCEDURAL HISTORY**

24          On April 12, 2006, the San Mateo County district attorney filed an information charging

25   Petitioner as follows: count 1 - attempted willful, deliberate, and premeditated murder; count 2 -

26   assault with a firearm; count 3 - kidnapping; and count 4 - rape.  The information further alleged

27   a number of enhancements, including personal use of a firearm and infliction of great bodily

28   injury.

1    In 2007, Petitioner's trial took place.  However, on April 18, 2007, a mistrial was

2    declared because the jury announced that it could not reach a verdict.

3    On November 9, 2007, on retrial, the jury convicted Petitioner of count 1, attempted

4    murder, but found not true the allegation that the crime was willful, deliberate, and premeditated.

5    The jury also found Petitioner guilty of count 2, assault with a firearm, but not guilty of counts 3

6    and 4, kidnapping and rape, respectively.  As to counts 1 and 2, the jury found true the

7    enhancements for personal firearm use and great bodily injury.

8    On January 30, 2008, Petitioner moved for a new trial.  On February 6, 2008, the trial

9    court denied his motion.  On that same day, Petitioner was sentenced to state prison for thirty-

10    four years to life -- the upper term of nine years on count 1, with a consecutive term of twenty-

11    five years to life for the firearm enhancement.

12    Petitioner timely appealed, raising most of the claims alleged in this present petition.  On

13    April 10, 2009, the California Court of Appeal affirmed the conviction.  On July 8, 2009, the

14    California Supreme Court summarily denied review.

15    On September 14, 2009, Petitioner began a collateral attack on his judgment by filing a

16    state habeas petition in the San Mateo County Superior Court, raising another claim of

17    ineffective assistance of counsel relating to pursuing the defense theory that Petitioner did not

18    commit the charged crimes.  On September 23, 2009, the state superior court denied the petition

19    in a reasoned decision.  Thereafter, Petitioner filed state habeas petitions in the state appellate

20    and supreme courts.  Both petitions were summarily denied.

21    Petitioner commenced this federal action on September 27, 2010.

22    **BACKGROUND**[1]

23    Rosa V. (the victim) met appellant in April 2005.  They became
24    friends, although the victim was living with Gonzalo Blanco.  In October, the
     victim borrowed $4,000 from appellant.  They had consensual sex on two
     occasions, in November and December.  Thereafter, their relationship began
25    to change; appellant became more possessive of the victim and wanted to

26    

27    [1]  The facts of this case are taken from the California Court of Appeal opinion in *People
28    v. Ramirez*, No. A120631, 2009 WL 963119 (Cal. App. 1 Dist. Apr. 10, 2009).  (Resp. Ex. C
     ("Op.")).

control her.  Although the victim told appellant the relationship was not working, he continued to pursue her.  In early January 2006, appellant told the victim he still wanted to have more than just a friendship with her and wanted to marry her.  On the afternoon of January 10, 2006, appellant called the victim on her cell phone, told her he was drunk, at a motel, could not drive, and asked her to give him a ride home.  The victim replied that she was working and he should call her later.  When he called her again, she agreed to give him a ride when she finished working.  Appellant gave her directions to a Motel 6 in Fremont.  She planned to tell him not to bother her anymore.

When the victim arrived at the motel, she called appellant and he told her to come up to his room.  The victim knocked on appellant's motel room door.  Appellant opened the door, pointed a gun at the victim's face, and demanded she enter the room.  Inside, appellant demanded that the victim drink a glass of wine.  According to the victim, appellant ordered her to remove her pants and raped her while pointing the gun at her chest.  While doing so he told her to tell him she loved him and wanted to marry him.  She complied because he was pointing the gun at her.

Before appellant and the victim left the motel room appellant put the gun in his jacket pocket and told the victim not to try anything, "because I know where your children are; I know where they live."  At gunpoint, he led her to her car, and forced her inside.  For a brief period, appellant left the victim in her car while he returned his room key to the motel office.  He then entered the passenger seat of the car and they headed for Redwood City.  En route appellant repeatedly told the victim he loved her, wanted her to marry him, and she "had to be his."  He also said, "[y]ou left me no other choice but to do it this way."  At some point, the victim told appellant she loved him and wanted to be with him, because that is what he wanted to hear.  At one point during the drive, appellant told her to pull over to the side of the freeway.  She did so and he vomited out the car window.

They then drove to the Redwood City building where appellant lived and the victim pulled up in front of the building next to a parked taxi.  Appellant then ordered her to drive around the corner.  She did so, stopped the car, left the car running and her foot on the brake, and told him to get out of the car.  He asked her to kiss him and when she refused, he asked her if she loved him.  She said, "no," hit the steering wheel, looked at appellant, and told him to get out of the car.  Appellant then told her "if [she] wasn't going to be his, [she] wasn't going to be anyone's."  He grabbed her by the neck, put her in a headlock and pulled her toward his chest.  He then removed the gun from his pocket, and placed it against her head.  The victim heard a gunshot and felt blood running down her face.  She then heard three more shots fire in rapid succession.

Appellant let go of the victim and she sat up and told him to get out of the car.  He tried to grab her cell phone when she tried to open it.  He then told her he was sorry and exited the car.  When the victim looked in the car's side mirror she saw appellant pointing the gun at her head.  She quickly drove off and eventually saw a police car and asked the officers for help.  She told them appellant had shot her and described appellant's clothing.  According to police, at about 10:00 p.m. they were contacted by the victim who had suffered multiple gunshot wounds and was "very hysterical, very upset."

As a result of the shooting the victim suffered gunshot wounds to her

scalp, left arm and left breast.  Two bullets lodged in her left breast and one passed through her left arm.  She also suffered what appeared to be a flash powder burn on her left index finger from the discharge of the gun.

Atherton Police Officer Devlugt was on patrol when he received a dispatch bulletin describing the victim's attacker and that a handgun was used in the shooting.  At 10:23 p.m., Devlugt saw a man, later identified as appellant, matching the description of the suspect, walking in unincorporated Redwood City.  Devlugt briefly lost sight of appellant and, moments later, stopped a taxi carrying two passengers, one of whom was appellant.  Devlugt ordered appellant out of the taxi, handcuffed him and noticed blood on his hands and shirt.  No firearm was found on appellant's person or in or around the taxi.

Redwood City Police Detective Reynolds interviewed appellant at the police station between midnight and 1:00 a.m. on the night of the shooting.  FN4.  Appellant appeared "very nonchalant, unconcerned" and "flippant."  Only when Reynolds asked if he was concerned about the victim did appellant express "some sort of concern."  When Reynolds asked about the source of the blood on his clothing, appellant said he had fallen down.  Appellant said he had had too much to drink and could not remember what happened that night.  He described the victim as a "friend," and said he had not seen her for three days.  He denied owning a gun or firing one that night.

FN4. The video recorded interview was played for the jury, and it and a transcript of the interview were admitted into evidence.

Reynolds swabbed appellant's hands and face for gun shot residue.  He also took buccal (cheek) swabs of appellant and the victim to test for DNA.  Appellant's cell phone had the victim's image as its screen saver and revealed five calls placed to the victim on January 10, the last at 8:20 p.m.  The victim's cell phone was bloody and revealed three calls from appellant on January 10, the last at 8:20 p.m.

According to the testimony of a criminalist, the gun shot residue swabs taken from appellant revealed many highly specific particles of gun shot residue on both of his hands and his face, consistent with having an arm around the victim in a headlock and firing with his right hand.  FN5.

FN5. On cross-examination, the criminalist testified that the gunshot residue could also have been deposited on appellant if the victim was shot at by someone outside the car while she was seated next to appellant.

At approximately 2:00 a.m. on January 11, Reynolds also administered two blood alcohol screening tests to appellant, two minutes apart.  The results were .0993 and .0973, which are slightly over the legal .08 limit.  According to Reynolds, these test results, and the fact that appellant did not seem "overly intoxicated," were inconsistent with appellant's insistence that he could not remember what had occurred that night.

Reynolds conducted a second interview of appellant on the afternoon of January 11.  FN6.  Appellant again said he did not remember what happened the prior evening because he had been very drunk.  However, he also stated he met the victim at a Fremont Motel 6 the previous evening, was

in the victim's car with her, and vomited when she stopped the car. He initially denied being covered in blood when arrested, but then said he had fallen down. He also said he wanted the victim to marry him, and she told him she was going to leave her husband.

      FN6. The video recorded interview was played for the jury, and it and a transcript of the interview were admitted into evidence.

      On the morning after the shooting, an unloaded .25-caliber semiautomatic handgun was discovered in the bushes near the shooting scene. No shell casings were found in the area. The gun was swabbed for fingerprints and DNA. No usable fingerprints were found, but a DNA swab of the gun's slide grip revealed the victim's DNA. A DNA swab from the gun's safety latch revealed a mixture of DNA from three people; the victim was the primary source of the DNA on that part of the gun, and appellant could not be included or excluded as a DNA source. The gun's hammer had a DNA mixture from two persons. The test was inconclusive for the DNA of appellant, but revealed the victim as a possible DNA contributor.

      A bullet and three shell casings were recovered from the victim's car. Ballistics tests concluded that the two bullets removed from the victim's chest and the three recovered shell casings were fired from the gun recovered from the bushes near the shooting scene. FN7.

      FN7. The parties later stipulated that the two bullets recovered from the victim's left breast were fired from the recovered firearm.

      Isabel Arellano lived with appellant between September 1999 and October 2005, and they had a daughter together. In the summer of 2005, Arellano began thinking that appellant was cheating on her. On September 30, appellant told Arellano that he was seeing "Elvira," identified at trial as the victim. In October, Arellano left appellant and moved out of their residence. Arellano visited appellant in jail on January 13, 2006. He told her he could not remember what had happened because he was very drunk. During a subsequent visit to the jail, appellant told Arellano he had shot the woman he had been seeing while he lived with Arellano. Appellant said he had lent the victim some money and shot her because he thought the victim was cheating on him. Appellant also told Arellano to go to Mexico, and his son would give her the money to do so.

      Two or three weeks after the shooting, the victim told Blanco that appellant had raped her at gunpoint in the motel room, forced her to drive him home, and shot her because she told appellant she did not want to live with him or be with him.

      The parties stipulated that the victim was the source of the blood found on appellant's clothing.

      The thrust of the defense was appellant did not commit any of the charged offenses. Defense counsel argued that Arellano had a motive to shoot the victim.

(Op. at 2-6.)

1

**LEGAL CLAIMS**

Petitioner asserts the following claims for habeas relief: (1) the trial court failed to sua sponte instruct the jury regarding the lesser included offense of attempted voluntary manslaughter, and trial counsel was ineffective for requesting to exclude such an instruction; (2) the trial court failed to sua sponte instruct the jury regarding voluntary intoxication, and trial counsel was ineffective for failing to request such an instruction; (3) prosecutorial misconduct; (4) ineffective assistance of trial counsel for pursuing the defense theory that Petitioner did not commit the charged crimes; and (5) ineffective assistance of appellate counsel.

**DISCUSSION**

I.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).   The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Terry*, 529 U.S. at 412-13.  A state court decision is an "unreasonable

application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340. The Court must presume correct any determination of a factual issue made by a state court unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of Petitioner's claims in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Here, that decision is the opinion of the California Court of Appeal.

II.    Petitioner's Claims

        A.    Failure to Instruct on Attempted Voluntary Manslaughter and Ineffective
              Assistance of Counsel for Requesting Trial Court to Exclude Such an Instruction

As mentioned above, the defense argued that Petitioner did not commit any of the charged crimes. Thus, his trial counsel specifically requested the trial court to exclude the jury instruction on the lesser included offense of attempted voluntary manslaughter.

On appeal, and now in the present petition, Petitioner argues that the trial court was required to give such an instruction sua sponte regardless of his trial counsel's request. Petitioner also argues that his trial counsel's request to exclude that instruction constituted ineffective assistance of counsel.

The state appellate court rejected these claims upon finding this constituted an "invited

error" under state law, as follows:

> The trial court instructed the jury on attempted murder (CALCRIM No. 600) and attempted murder with deliberation and premeditation (CALCRIM No. 601). It did not instruct on attempted voluntary manslaughter, a lesser included offense of attempted murder. (*People v. Cole* (2004) 33 Cal. 4th 1158, 1215-1216.) Appellant contends the court committed reversible error in failing to so instruct the jury sua sponte. We conclude any error in failing to instruct on [attempted] voluntary manslaughter was invited.
>
> During a discussion regarding jury instructions, the following colloquy between the court and counsel occurred:
>
> "The Court: And we didn't request any lessers last time; not requesting any this time? [FN8.]
>
>> FN8. This statement was erroneous. In the first trial, the jury was instructed on the lesser included offense of attempted voluntary manslaughter (CALCRIM No. 603) pursuant to the parties' requests.
>
> "[Defense Counsel]: No.
>
> "The Court: That, is, that is correct? You are not going to request any?
>
> "[Defense Counsel]: Correct.
>
> "[The Court]: Okay.
>
> "[The Prosecutor]: Nor are the People. Thank you.
>
> "[The Court]: Great. And it is my finding that, well, I will wait until you put on your defense. I will indicate, making a record, that the defense is, he didn't do it?
>
> "[Defense Counsel]: Correct.
>
> "[The Court]: And if he didn't do it, there is no lesser considerations. All right? [¶] Okay. Thank you very much."
>
> "Invited error . . . will only be found if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction. [Citations.]" (*People v. Valdez* (2004) 32 Cal. 4th 73, 115.)
>
> Appellant argues the doctrine of invited error should not apply because defense counsel mistakenly believed that the lesser included attempted voluntary manslaughter instruction was "not required" because the defense theory was factual innocence. He cites several cases which stand for the principle that, where supported by the evidence, the trial court must instruct on a lesser included offense even if it is inconsistent with the defense elected

by the defendant (*People v. Sedeno* (1974) 10 Cal. 3d 703, 717, fn. 7),[2] or if the defendant claims to be innocent of both the greater and lesser offenses (*People v. Barton* (1995) 12 Cal. 4th 186, 195-196).

Defense counsel did express a tactical purpose for rejecting an instruction on the lesser included offense when he agreed with the trial court that the thrust of the defense was that appellant did not commit the shooting, and tacitly agreed with the court's statement that, given that defense, no lesser instructions were necessary. Whether counsel's tactical choice was mistaken is irrelevant to our invited error determination. In *People v. Cooper* (1991) 53 Cal. 3d 771, 831, our Supreme Court explained, "[T]he record must show only that counsel made a conscious, deliberate tactical choice between having the instruction and not having it. If counsel was ignorant of the choice, or mistakenly believed the court was not giving it to counsel, invited error will not be found. If, however, the record shows this conscious choice, it need not additionally show counsel correctly understood all the legal implications of the tactical choice. Error is invited if counsel made a conscious tactical choice."

We conclude appellant invited the error complained of on appeal and therefore need not consider the merits of his instructional error claim.

For the first time in his reply brief, appellant asserts that if the instructional error was invited, defense counsel's failure to request the attempted voluntary manslaughter instruction constituted ineffective assistance. Although we generally decline to consider arguments raised for the first time in the reply brief (*Campos v. Anderson* (1997) 57 Cal. App. 4th 784, 794, fn. 3), we will address the claim on the merits to forestall any later claim of incompetence of appellate counsel. Quite simply, because an attempted voluntary manslaughter instruction would have been inconsistent with defendant's theory of the case, we cannot say defense counsel had no rational tactical purpose for failing to request it. (*People v. Wader* (1993) 5 Cal. 4th 610, 643.) Additionally, defense counsel could have made the tactical choice to take an all or nothing approach on the greater offense of attempted murder, rather than giving the jury the opportunity to convict on the lesser included offense of [attempted] voluntary manslaughter. Such a tactical choice could have been bolstered by the jury's deadlock on all charges in the first trial.

(Op. at 6-8 (brackets and footnote added).)

1.     Instructional Error

This Court need not reach the issue of whether the decision not to instruct the jury on the lesser included offense of attempted voluntary manslaughter was in error or whether such error was invited or harmless because under the law of this circuit, this claim does not raise a federal question. In *Solis v. Garcia*, the Ninth Circuit Court of Appeals ruled that "the failure of a state

---

[2] *People v. Sedeno*, 10 Cal. 3d 703, 717 n.7 (1974), *overruled on other grounds in People v. Breverman*, 19 Cal. 4th 142, 149 (1998).

1   court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional

2   question and will not be considered in a federal habeas corpus proceeding."  219 F.3d 922, 929

3   (9th Cir. 2000) (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976)).

4       Petitioner's claim that the trial court erred in failing to instruct on a lesser included

5   offense does not raise a federal question.  Consequently, the state courts' rejection of this claim

6   was not contrary to, or an unreasonable application of, clearly established federal law as

7   determined by the Supreme Court.

8       Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

9                   2.   <u>Ineffective Assistance of Trial Counsel</u>

10      Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*,

11  466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, the petitioner

12  must establish two factors.  First, he must establish that counsel's performance was deficient, i.e.,

13  that it fell below an "objective standard of reasonableness" under prevailing professional norms,

14  *id.* at 687-68, "not whether it deviated from best practices or most common custom," *Harrington*

15  *v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690).  "A court considering

16  a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation

17  was within the 'wide range' of reasonable professional assistance."  *Richter*, 131 S. Ct. at 787

18  (quoting *Strickland*, 466 U.S. at 689).  Second, he must establish that he was prejudiced by

19  counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

20  unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466

21  U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the

22  outcome.  *Ibid.*  Where the defendant is challenging his conviction, the appropriate question is

23  "whether there is a reasonable probability that, absent the errors, the factfinder would have had a

24  reasonable doubt respecting guilt."  *Id.* at 695.

25      A reviewing federal habeas court must accord tactical decisions by trial counsel

26  considerable deference.

27          [C]ourts may not indulge "*post hoc* rationalizations" for counsel's
            decisionmaking that contradicts the available evidence of counsel's actions . . .
28          neither may they insist counsel confirm every aspect of the strategic basis for

his or her actions.  There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect."

*Richter*, 131 S. Ct. at 790 (citations omitted).  Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and  (3) the decision appears reasonable under the circumstances.  *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Terry*, 529 U.S. at 404-08.  A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  *See Pinholster*, 131 S. Ct. at 1410-11; *Richter*, 131 S. Ct. at 788 (same); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011) (same).  The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 131 S. Ct. at 788.

Petitioner claims that his trial counsel rendered ineffective assistance by requesting the trial court to exclude the attempted voluntary manslaughter instruction.  The state appellate court decided to consider this claim -- which was "raised for the first time in the reply brief" -- and held that counsel did not render ineffective assistance because such an instruction would be "inconsistent with defendant's theory of the case . . . ." (Op. at 8.)  As explained above, Petitioner's defense was that it was someone outside the car (it was suggested that it could possibly be his girlfriend, Arellano), who shot Vasquez.  Therefore, trial counsel argued that Petitioner was not guilty of any crime.  Meanwhile, the prosecution's case was that Petitioner shot Vasquez at close range with the intent to kill her.  Thus, the state appellate court rejected

1   Petitioner's claim because trial counsel's tactical approach seemed to have been an "all or nothing

2   approach on the greater offense of attempted murder, rather than giving the jury the opportunity

3   to convict on the lesser included offense of [attempted] voluntary manslaughter." (*Id.*)

4   Furthermore, the state appellate court pointed out that such a tactical choice "could have been

5   bolstered by the jury's deadlock on all charges in the first trial." (*Id.*)  Therefore, the state

6   appellate court found that there was a reasonable explanation for Petitioner's trial counsel's

7   decision to exclude the attempted voluntary manslaughter instruction.  This Court finds no basis

8   for disturbing the state appellate court's determination that counsel's performance was not

9   deficient, and thus it need not reach the issue of whether Petitioner suffered prejudice.

10          Accordingly, Petitioner is not entitled to habeas relief on this ineffective assistance of

11   counsel claim relating to his trial counsel's request to exclude the instruction on attempted

12   voluntary manslaughter.

13          B.      Failure to Instruct on Voluntary Intoxication and Ineffective Assistance of
                    Counsel in Failing to Request Such an Instruction
14
15          Petitioner claims the trial court also erred in failing to instruct the jury on voluntary

16   intoxication as a defense.  In the alternative, Petitioner argues that his trial counsel was

17   ineffective for failure to request such an instruction.

18          The state appellate court rejected these claims, as follows:

19              Next, appellant contends the court erred in failing to instruct the jury
             on voluntary intoxication pursuant to CALCRIM No. 625.  He argues either
20           the trial court had a sua sponte duty to so instruct, or defense counsel rendered
             ineffective assistance by failing to request such an instruction.  He contends
21           that as a result, the jury did not properly consider whether his consumption of
             alcohol affected or negated the specific intent necessary for attempted murder,
22           in violation of his rights to due process, fair trial, and fundamental fairness
             under the federal and state Constitutions.
23
                 CALCRIM No. 625 (2008) provides: "You may consider evidence, if
24           any, of the defendant's voluntary intoxication only in a limited way.  You may
             consider that evidence only in deciding whether the defendant acted with an
25           intent to kill[,] [or] [the defendant acted with deliberation and
             premeditation[,]] [[or] the defendant was unconscious when (he/she) acted[,]]
26           [or the defendant _____ <*insert other specific intent required in a
             homicide charge or other charged offense*>.] [¶]  A person is voluntarily
27           intoxicated if he or she becomes intoxicated by willingly using any
             intoxicating drug, drink, or other substance knowing that it could produce an
28           intoxicating effect, or willingly assuming the risk of that effect. [¶]  You may
             not consider evidence of voluntary intoxication for any other purpose." The

1   CALCRIM voluntary intoxication instruction applies to attempted murder.
    (*People v. Castillo* (1997) 16 Cal. 4th 1009, 1016; see also Judicial Council of
2   Cal., Crim. Jury Instns. (2008) Authority to CALCRIM No. 625, p. 420.)

3       As appellant appears to concede, a trial court has no sua sponte duty to
    instruct that a defendant's voluntary intoxication may be considered in
4   determining the absence of the required criminal intent. A defendant must
    request a voluntary intoxication instruction. (See *People v. Hughes* (2002) 27
5   Cal. 4th 287, 342; *People v. Saille* (1991) 54 Cal. 3d 1103, 1119-1120.)
    "'"[W]hen a defendant presents evidence [of voluntary intoxication] to attempt
6   to negate or rebut the prosecution's proof of an element of the offense
    [deliberation], a defendant is not presenting a special defense invoking sua
7   sponte instructional duties."' [Citation.] Instead, it is 'more like' a '"pinpoint"'
    instruction. [Citation.] Similarly, the omitted instruction in this case
8   concerned the defense's attempt to dispute the element of deliberate intent,
    and resembled a pinpoint instruction." (*People v. Middleton* (1997) 52 Cal.
9   App. 4th 19, 31-32, quoting *Saille*, at pp. 1117, 1119, disapproved on other
    grounds in *People v. Gonzalez* (2003) 31 Cal. 4th 745, 752-753, fn. 3.)
10
        We next consider whether defense counsel was ineffective in failing to
11  request the CALCRIM No. 625 instruction. A defendant claiming ineffective
    assistance of counsel has the burden to show: (1) counsel's performance was
12  deficient, falling below an objective standard of reasonableness under
    prevailing professional norms; and (2) the deficient performance resulted in
13  prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v.
    Ledesma* (1987) 43 Cal. 3d 171, 216-218.) Prejudice is shown when "there is
14  a reasonable probability that, but for counsel's unprofessional errors, the result
    of the proceeding would have been different. A reasonable probability is a
15  probability sufficient to undermine confidence in the outcome." (*Strickland*,
    at p. 694.)
16
        Moreover, "[r]eviewing courts reverse convictions on direct appeal on
17  the ground of incompetence of counsel only if the record on appeal
    demonstrates there could be no rational tactical purpose for counsel's
18  omissions. [Citation.]" (*People v. Lucas* (1995) 12 Cal. 4th 415, 442.)
    "When a claim of ineffective assistance is made on direct appeal, and the
19  record does not show the reason for counsel's challenged actions or omissions,
    the conviction must be affirmed unless there could be no satisfactory
20  explanation." (*People v. Anderson* (2001) 25 Cal. 4th 543, 569.)

21      Appellant argues substantial evidence was presented that appellant
    was "extremely" intoxicated at the time of the shooting, and "any reasonably
22  effective defense counsel, in an effort to avoid an attempted murder
    conviction . . . , would have requested an intoxication instruction." However,
23  the theory of the defense was that appellant did not shoot the victim. As in
    *Wader*, because an instruction on voluntary intoxication as negating specific
24  intent would have been inconsistent with appellant's theory of the case, we
    cannot say defense counsel had no rational tactical purpose in failing to
25  request it. (*Wader*, *supra*, 5 Cal. 4th at p. 643)

26  (Op. at 8-10.)

27          1.   Instructional Error

28      A defendant is entitled to an instruction on a theory of defense only "if the theory is

legally cognizable and there is evidence upon which the jury could rationally find for the defendant." *United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotation and citation omitted).  Due process does not require an instruction be given unless the evidence supports it.  *See Hopper v. Evans*, 456 U.S. 605, 611 (1982) (holding "due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction"); *see also Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (finding insufficient evidence to warrant self-defense instruction).

Although a petitioner need only show "there is evidence upon which the jury could rationally sustain the defense," *Boulware*, 558 F.3d at 974 (internal quotation and citation omitted), "[t]he omission of an instruction is 'less likely to be prejudicial than a misstatement of the law,'" *Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).  Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'"  *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson*, 431 U.S. at 155).  "'[T]he significance of the omission of such an instruction may be evaluated by comparison with the instructions that were given.'" *Murtishaw v. Woodford,* 255 F.3d 926, 971 (9th Cir. 2001) (quoting *Henderson*, 431 U.S. at 156).

As explained above, the state appellate court determined that the trial court had no duty to give such an instruction sua sponte.  The state appellate court explained that voluntary intoxication is not a defense, but is a pinpoint instruction that must given when there is a request for such an instruction.  (Op. at 9.)  Therefore, Petitioner's claim is without merit.  First, not even state law requires that a trial court must sua sponte give such an instruction.  Second, Petitioner has not shown any binding authority that he has a federal constitutional right to have a trial judge give such an instruction sua sponte.  Third, Petitioner provides no support for the proposition that the prosecution has a duty to disprove a mental state.  The prosecutor's role is to present evidence that supports a petitioner's conviction beyond a reasonable doubt, not to disprove a mental state put forth as a defense by a petitioner.  Fourth, such an instruction would have been contrary to Petitioner's assertion that he did not shoot Vasquez.  Fifth, Petitioner has not shown

prejudice.  As mentioned above, the jury convicted Petitioner of attempted murder.  However, the jury found not true the allegation that the crime was willful, deliberate, and premeditated. Thus, the failure to give the aforementioned instruction could only have been harmful if the jury reasonably could have found that he did not form the intent to kill Vasquez as a result of his voluntary intoxication.  Based on the jury's verdict, there could not have been a possibility of such a finding.  The jury undeniably found that Petitioner had shot Vasquez four times at point blank range after telling her that if he could not have her, nobody could -- thereby manifesting his intent to kill her.  Within half an hour of the shooting, Officer Devlugt observed Petitioner walking down the street.  After driving slowly past Petitioner, Officer Devlugt made a U-turn and radioed his dispatcher before driving back to arrest Petitioner.  During that brief time, Petitioner had the presence of mind to get into a taxi, in what could have been an attempt to avoid apprehension.  Additionally, Officers Devlugt and Yoakum had no difficulty communicating with Petitioner at the time they arrested him.  About ninety minutes later, Petitioner also spoke coherently when he was interviewed by Officer Reynolds at the police station.  Under the circumstances, no reasonable jury would have found that Petitioner had shot Vasquez, but that he was so intoxicated that he did not intend to kill her.

Having reviewed the record, this Court concludes the state appellate court was not "objectively unreasonable" in finding the evidence did not warrant a voluntary intoxication instruction.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 2.     Ineffective Assistance of Trial Counsel

Petitioner claims that his trial counsel rendered ineffective assistance by failing to request a pinpoint instruction allowing the jury to use evidence of voluntary intoxication to find him guilty of the lesser offense of attempted voluntary manslaughter.  The state appellate court held that counsel did not render ineffective assistance because such an instruction would be contrary to the defense's trial strategy that Petitioner "did not shoot the victim."  (Op. at 10.)  As stated above, the state appellate court determined that Petitioner's trial counsel had no rational tactical purpose in failing to request the instruction because "such an instruction on voluntary

1    intoxication as negating specific intent would have been inconsistent with [his] theory of the

2    case . . . ." (Op. at 10.)

3         Based on the applicable law relating to ineffective assistance of counsel claims outlined

4    above, Petitioner's claim is without merit.  First, Petitioner has not shown that defense counsel's

5    performance was deficient under *Strickland*.  As the state appellate court reasoned, requesting

6    such an instruction would be contrary to the defense's trial strategy.

7         Second, Petitioner has not shown prejudice.  The jury would be less likely to believe

8    Petitioner's defense if it heard, at defense counsel's request, an instruction at odds with the

9    defense's trial strategy.  Petitioner, then, has not shown that but for defense counsel's alleged

10   failure, the outcome of the proceeding would have been different.

11        Accordingly, Petitioner is not entitled to habeas relief on this ineffective assistance of

12   counsel claim relating to his trial counsel's alleged failure to request the trial court to instruct the

13   jury on voluntary intoxication as a defense.

14        C.    <u>Prosecutorial Misconduct</u>

15        Petitioner claims that the prosecutor committed misconduct during his rebuttal argument

16   by revealing a comment made by his trial counsel to the prosecutor during a private

17   conversation.  Petitioner further argues that the comment could have been construed to mean that

18   his trial counsel believed he was guilty.

19        The state appellate court summarized the facts and its holding as follows:

20             Appellant next argues the following comments by the prosecutor
              during his rebuttal argument constituted prejudicial misconduct:
21

22             "[The Prosecutor]: . . . Let me start over by directing a comment
              [defense counsel] just made.  [¶]  He suggested to you, there's no way
23            [appellant] made -- committed these crimes; didn't seem well planned out.  [¶]
              Like, who would do something like that?  Doesn't seem like a smart idea.
              Wasn't some grand plan, somebody else, [defense counsel] told me, I think is
24            fitting in this case.  Wasn't when we were in session.  We were just talking.

25             "[Defense Counsel]: Objection.

26             "[The Court]: Just, excuse me. Sustained.

27             "[The Prosecutor]: Something an attorney once told me, you get, don't
              catch the smart ones.  You don't catch the smart ones.  So just because it
28            doesn't like, seem like it was [a] well thought out plan, doesn't mean that

[appellant] didn't do it or wasn't capable of what he did.  Doesn't have to be some elaborate scheme."

At the close of argument, the trial court reprimanded the prosecutor:

"[The Court]: I was a little surprised and . . . disappointed that you attempted to get in before the jury whatever comment [defense counsel] may have made to you; that is beyond the pale.  And I am going to have to think about it.  But that is not something you should have tried to do.  And I am surprised to learn that you think you can do that.  That's just not appropriate.  And it's not proper.  And it's not allowed.  So please don't do something like that again."

The next day, appellant filed a motion for mistrial or, in the alternative, a curative instruction.  The motion asserted that after the court sustained defense counsel's objection to the prosecutor's comment regarding an out of court comment defense counsel made to him, the prosecutor's comment that, "'[h]e had spoken to an attorney who said, "They don't catch smart ones,"'" was, itself, improper because it impliedly referred to a conversation between defense counsel and the prosecutor.

The court denied the motion for mistrial, but gave the jury the following curative instruction: "I have been forced to take the extraordinary step of reconvening you for the purpose of delivering one additional instruction.  [¶]  Yesterday during his rebuttal, the prosecutor improperly relayed a conversation between himself and defense counsel, which was taken out of context.  And that had absolutely no bearing on this case.  [¶]  As such the prosecutor's improper remarks amount to an attempt to prejudice you against the defendant, were you to believe these.  [¶]  You were warned you [sic] insinuations and convicting the defendant on . . . the basis of them, I would have to declare a mistrial.  Therefore, you must disregard these improperly unsupported remarks.  I would further remind you that the comments of counsel are not evidence, and that nothing I say, is intended to comment upon the evidence in this case.  [¶]  You are the sole judges of the facts in this case, and as such, you should limit your deliberations to the evidence that was properly admitted in this trial.  [¶]  Any weight given by you to the improper remarks of the prosecutor would amount to a violation of your oath as jurors."

Subsequently, appellant raised the prosecutorial misconduct issue in his motion for new trial.  The court denied the motion on the grounds that the comments did not rise to the level required to grant a mistrial, and given the overwhelming evidence of guilt, any error was harmless.

Appellant contends the prosecutor's prejudicial misconduct was not alleviated by the court's curative instruction.  He argues the prosecutor's comments improperly implied there was additional evidence known to the prosecutor but unavailable to the jury, and conveyed that defense counsel believed appellant was not one of "'the smart ones,'" i.e., he was guilty.  Quoting *People v. Pitts* (1990) 223 Cal. App. 3d 606, 694, appellant also argues the curative instruction was ineffective because "A prosecutor's closing argument is an especially critical period of trial.  [Citation.]  Since it comes from an official representative of the People, it carries great weight . . . . [Citation.]"

In general, an appellate court reviews a trial court's ruling on prosecutorial misconduct for abuse of discretion.  (*People v. Alvarez* (1996) 14 Cal. 4th 155, 213.)  ""'[T]he applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.'"'  [Citation.]  Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves ""the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury."'"  [Citation.]  . . . [W]hen the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion."'  [Citation.]"  (*People v. Ayala* (2000) 23 Cal. 4th 225, 283-284.)  We conclude appellant has failed to establish the trial court abused its discretion.  The court's curative instruction was immediate and clearly directed the jury not to consider the prosecutor's improper unsupported remarks and reminded them the arguments of counsel are not evidence.  Jurors are presumed to follow the court's instructions.  (*People v. Hardy* (1992) 2 Cal. 4th 86, 208.)  In addition, the evidence of guilt was extremely strong.  Appellant shot the victim four times at close range while they were seated in the car.  Gunshot residue was found on appellant's hands and face, and he was covered in the victim's blood when arrested.  The gun used to shoot the victim was found in the bushes near appellant's home, bullet casings were found inside the victim's car and no casings were found outside.  Two or three weeks after the shooting, while in jail, appellant told Arellano he had shot the woman he had been seeing.  That the jury rejected a finding that the shooting was deliberate and premeditated and acquitted appellant of rape and kidnapping indicates that it carefully considered the evidence presented.  Based on the record before us, the court properly rejected the contention that, but for the prosecutor's improper comments, there is a reasonable likelihood the jury would have reached a result more favorable to appellant.

(Op. at 10-13.)

Prosecutorial misconduct is cognizable in federal habeas corpus.  The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  The appropriate standard of review of these claims of prosecutorial misconduct based on remarks made in the closing statement (or in this case, in the rebuttal argument) is the narrow one of due process -- whether the remarks rendered the trial fundamentally unfair.  *See id.*; *see also Smith v. Phillips,* 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness.  *Tan v. Runnels*, 413

1   F.3d 1101, 1112 (9th Cir. 2005), *cert. denied*, 546 U.S. 1110 (2006).  A prosecutorial

2   misconduct claim is decided "'on the merits, examining the entire proceedings to determine

3   whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting

4   conviction a denial of due process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.) (citation

5   omitted), *cert. denied*, 516 U.S. 1017 (1995).

6         The first factor in determining whether the prosecutor's misconduct amounted to a

7   violation of due process is whether the trial court issued a curative instruction.  When a curative

8   instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and

9   that no due process violation occurred.  *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987);

10  *Darden*, 477 U.S. at 182 (Supreme Court condemned egregious, inflammatory comments by

11  prosecutor but held that trial was fair since curative actions were taken by trial judge); *Tan*, 413

12  F.3d at 1115 ("we presume jurors follow the court's instructions absent extraordinary

13  situations").  This presumption may be overcome if there is an "overwhelming probability" that

14  the jury would be unable to disregard evidence and a strong likelihood that the effect of the

15  misconduct would be "devastating" to the defendant.  *See Greer*, 483 U.S. at 766 n.8; *Tan*, 413

16  F.3d at 1115-16 (finding trial fair where jury received instructions five different times to

17  consider only evidence presented, and not its sympathy for victim's life story).

18        Here, even if the aforementioned remarks made by the prosecutor during his rebuttal

19  argument were improper, there has been no showing of prejudice.  In the instant matter, the trial

20  court's curative instruction admonished the jury to disregard the remarks and to remember that

21  the jury was the "sole judges of the facts in this case . . . ."  (Op. at 12.)  Jurors are presumed to

22  follow their instructions, *see Richardson v. Marsh*, 481 U.S. 200, 206 (1987), and when a

23  curative instruction is issued, a court presumes that the jury has disregarded the inadmissible

24  evidence or improper statement and that no due process violation occurred, *see Greer*, 483 U.S.

25  at 766 n.8.  This presumption may be overcome if there is an "overwhelming probability" that

26  the jury would be unable to disregard evidence and a strong likelihood that the effect of the

27  misconduct would be "devastating" to the defendant.  *Id.*  Petitioner's mere allegation is

28  insufficient to establish an "overwhelming probability" that the jury was unable to disregard the

aforementioned remarks or that there was a strong likelihood that the effect of the remarks would

be "devastating" to him. *Id.*

Accordingly, Petitioner is not entitled to habeas relief on this claim.

D.   Ineffective Assistance of Trial Counsel For Pursuing Defense Theory That
     Petitioner Did Not Commit Charged Crimes

Petitioner alleges that he was denied effective assistance of trial counsel because his trial

counsel pursued the defense theory that Petitioner did not commit the charged crimes, stating:

> . . . a reasonably competent attorney whose client was apprehended in the
> proximity of the shooting with the victim's blood all over him and gunshot
> residue on his hands and face, and positively identified by his girlfriend,
> would opt to mitigate the homicide rather than attempt to convince a jury
> someone else did it.

(Traverse at 22.)[3]  Petitioner raised this ineffective assistance of counsel claim during collateral

review, and it was the only claim in his habeas petition presented to the San Mateo County

Superior Court.  The state superior court elaborated on Petitioner's claim as follows:

> The Petitioner's claim here is not that defense counsel was ineffective for
> failing to request the instruction, but that he was ineffective for relying on the
> defense that the Petitioner did not commit the shooting.  He argues that, given
> the evidence, this was an unreasonable tactic and that trial counsel instead
> should have relied on the defense that the Petitioner committed the shooting in
> the heat of passion, thus reducing the crime from attempted murder to
> attempted voluntary manslaughter.

(Resp. Ex. I at 2.)  In rejecting this claim, the state superior court stated the following:

> To establish attempted voluntary manslaughter, the evidence must
> show that "the killer's reason was actually obscured as a result of a strong
> passion aroused by a provocation sufficient to cause an ordinary person of
> average disposition to act rashly or without due deliberation and reflection,
> and from this passion rather than from judgment." (*People v. Breverman*
> (1998) 19 Cal. 4th 142, 163 (internal punctuation omitted).)  However, "no
> defendant may set up his own standard of conduct or justify or excuse himself
> because in fact his passions were aroused, unless further the jury believe that
> the facts and circumstances were sufficient to arouse the passions of the
> ordinarily reasonable man." (*People v. Danielly* (1949) 33 Cal. 2d 362, 377.)
>
> An ineffective assistance of counsel claim requires a showing, not only
> that counsel's performance was deficient, but also that the defense was
> prejudicial, i.e., that the errors were so serious that the result of the trial is

---

[3] The Court has already resolved Petitioner's two other claims of ineffective assistance of
counsel based on his trial counsel's failure to request the attempted voluntary manslaughter and
voluntary intoxication instructions.  (*See supra* Discussion II.A.2., II.B.2.)

1    unreliable.  (*Strickland v. Washington* (1984) 466 U.S. 668.)

2           Here, in order to establish prejudice, the Petitioner must establish facts
     that show that, at the time of the killing, he was in the grip of a strong passion
3    aroused by provocation that would have caused an ordinary person of average
     disposition to act rashly or without due deliberation and reflection.  The
4    Petitioner has alleged no such facts.  He states only that he was drunk, and
     cites to his attorney's characterization at the preliminary hearing that the
5    assault was "a jealous rage" and an "explosion of violence."  At trial, the
     victim testified that the Petitioner asked her to kiss him and she refused, and
6    then asked her if she loved him and she said no and asked him to get out of
     the car.  He then told her that if she wasn't going to be his, she wasn't going to
7    be anybody's, grabbed her by the neck, put her in a headlock, pulled her
     toward his chest, and shot her.

8
            These facts do not establish provocation that would have caused an
9    ordinary person of average disposition to act rashly and without due
     deliberation and reflection.  (*See People v. Hyde* (1985) 166 Cal. App. 3d 463,
10   473 (jealously not sufficient provocation.)).

11   (*Id.* at 2-3.)

12          A difference of opinion as to trial tactics does not constitute denial of effective

13   assistance, *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir.), *cert. denied*, 454 U.S. 1127

14   (1981), and tactical decisions are not ineffective assistance simply because in retrospect better

15   tactics are known to have been available.  *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984).

16   In light of the highly deferential standard of review -- and for the same reasons stated above

17   relating to the ineffective assistance of counsel claims dealing with the aforementioned jury

18   instructions -- this Court finds no basis for disturbing the state superior court's determination that

19   counsel's performance was not deficient and that Petitioner suffered no prejudice.

20          Accordingly, Petitioner is not entitled to habeas relief on this ineffective assistance of

21   counsel claim.

22          E.      Ineffective Assistance of Appellate Counsel

23          Claims of ineffective assistance of appellate counsel are reviewed according to the

24   standard set out in *Strickland*.  A defendant therefore must show that counsel's advice fell below

25   an objective standard of reasonableness and that there is a reasonable probability that, but for

26   counsel's unprofessional errors, he would have prevailed on appeal.  *Miller v.  Keeney,* 882 F.2d

27   1428, 1434 & n.9 (9th Cir. 1989) (citing *Strickland*, 466 U.S. at 688, 694; *United States v. Birtle*,

28   792 F.2d 846, 849 (9th Cir. 1986)).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *Jones v. Barnes,* 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Id.* at 1434 (footnote and citations omitted).  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason -- because he declined to raise a weak issue. *Id.*

Petitioner argues that appellate counsel was ineffective for failing to raise the ineffectiveness of his trial counsel on appeal.  For the reasons discussed above, trial counsel's performance did not rise to the level of ineffective assistance of counsel.  Therefore, appellate counsel's decision not to raise these meritless claims does not amount to ineffective assistance.

Accordingly, Petitioner is not entitled to relief on his ineffective assistance of appellate counsel claim.

**CONCLUSION**

For the reasons set forth above, the petition for writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.  Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

The Clerk of the Court shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: _12/9/11_

LUCY H. KOH
United States District Judge